DOMENGEAUX, Chief Judge.
This is one of three consolidated suits which were filed as a result of an automobile accident on December 20, 1986. One group of plaintiffs, Carl and Ivory Jarred and Michael and Lesa Watson, appeal the trial court’s refusal to annul a judgment dismissing their claims against defendants, Stanley and Ann Smith. For the following reasons, we affirm.[1]
FACTS AND PROCEDURAL HISTORY
On December 20, 1986, two vehicles collided near a road construction site in Vernon Parish, Louisiana. In rainy weather conditions, a Dodge van driven by Ann Smith, with her daughter Laura Elizabeth as passenger, crossed the center line, striking a 1984 Oldsmobile operated by Dorothy Self and occupied by Ivory Jarred, Lesa Watson, and the Watsons’ minor child, *497 Kristen. Laura Elizabeth Smith subsequently died from injuries received in the accident.
Leían and Dorothy Self filed suit against the Smiths and their liability insurer, Continental Insurance Company. In a separate proceeding, the Jarreds and the Watsons also sued the Smiths and Continental, as well as Aetna Casualty Insurance Company, the Jarreds’ uninsured motorist carrier, and Louisiana Farm Bureau, the Selfs’ uninsured motorist carrier. The Smiths third partied the State, through the Department of Transportation and Development, two construction contractors and the contractors’ insurers; the plaintiffs then added these parties as defendants. The Smiths also filed a separate suit against Leían Self, DOTD, the contractors and their insurers. The above actions were consolidated in the trial court.
In June of 1988, Continental offered to settle the claims of the Selfs, the Jarreds and the Watsons for its policy limits of $100,000.00, provided the plaintiffs would agree to release Stanley and Ann Smith. When the plaintiffs could not agree upon a division of these proceeds, Continental deposited its policy limits, plus accrued interest, into the registry of the court and obtained a judgment relieving it of further liability, except to provide a defense for the Smiths.
In November of 1988, the Selfs agreed to accept $35,000.00 of the deposited funds, with the Jarreds and the Watsons to receive the balance of $83,321.10. However, the funds were not disbursed because Aet-na and Louisiana Farm Bureau insisted their subrogation claims for medical payments should be paid in preference to the claims of the plaintiffs. On December 6, 1988, the trial court signed a motion for partial summary judgment rejecting the demands of Aetna and Farm Bureau. The trial judge then ordered the clerk of court to release the money on deposit to the plaintiffs.
That same day, while waiting for the funds to be released, Thomas Wilson, Jr., counsel for the Jarreds and the Watsons, signed a “Joint Motion To Dismiss” presented to him by Robert Bussey, counsel for the Smiths and Continental. The motion alleged the Selfs, the Jarreds and the Watsons desired to dismiss with prejudice any and all claims they may have against the Smiths and Continental. Wilson also signed a “Judgment and Order of Dismissal” which was to be presented to the trial judge after it was signed by all counsel of record. The trial court later found that Wilson’s signing of these two documents was not a condition for the release of the funds because Continental had already perfected an unconditional tender.
On or about December 20, 1988, before the joint motion to dismiss was presented to the trial judge, Wilson informed Bussey by telephone that he could ho longer consent to the release of the Smiths. Apparently, additional research led him to conclude that release of the Smiths would impair his clients’ rights against the remaining defendants, DOTD and the construction contractors. Wilson sent Bussey a letter reiterating his objections and instructing Bussey to delete his name from the joint motion to dismiss. In another letter, Wilson stated his clients did not intend to pursue an excess judgment against the Smiths. Return receipts indicated the letters were received by Bussey’s firm on December 22, 1988.
After the joint motion to dismiss was signed by all counsel, a representative of Bussey’s firm submitted a judgment to the clerk’s office with instructions that it be presented to the judge for his signature. The trial judge was not informed of Wilson’s objections to the motion to dismiss before he signed the judgment on December 28, 1988.
Wilson then filed a “Rule to Show Cause” praying for an order vacating or annulling the judgment of December 28, 1988. At trial on the rule, Wilson attempted to prove that Bussey agreed to delete Wilson’s signature from the joint motion to dismiss before it was presented to the trial judge.
JUDGMENT OF DISMISSAL
Initially, we note appellants use of a rule to show cause to attack the judgment *498 rendered in these ongoing proceedings is procedurally improper. The allegations in plaintiffs’ rule attempt to state a cause of action under La.C.C.P. art. 2004, which permits the annulment of a judgment obtained by fraud or ill practices. Jurisprudence requires that such grounds be asserted in a direct action and not raised collaterally. The party praying for the nullity must bring his action by means of a petition, and the adverse party must be cited to appear, as in ordinary suits. LeGlue Buick, Inc. v. Smith, 390 So.2d 262 (La.App. 3d Cir.1980); Moody v. Dupont Manufacturers, 535 So.2d 384 (La.App. 3d Cir.1988); American Bank and Trust Co. v. Marbane Investments, Inc., 337 So.2d 1209 (La.App. 3d Cir.1976). However, the trial court proceeded with a hearing on the rule, and a complete record was prepared, which included the trial judge’s findings of fact. Under these circumstances, we may properly consider the merits. See Davis v. Sewerage and Water Board of New Orleans, 469 So.2d 1144 (La.App. 4th Cir.1985).
The requirements for obtaining an annulment of a judgment under La.C.C.P. art. 2004 are set forth in Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983):
Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable.
434 So.2d 1067, at 1070.
In Kem Search, the Supreme Court annulled a default judgment where the defaulted party relied on facts which he reasonably believed created an agreement by the opposing party to warn him of any action taken in the suit. Under these circumstances, the Supreme Court held enforcement of the judgment would be unconscionable because the action of the opposing attorney deprived the defaulted party of an opportunity to urge potentially valid defenses of which he made a prima facie showing.
The equitable considerations in the Kem Search case are not present here. The trial judge found, and we agree, that Wilson freely signed the joint motion to dismiss with full knowledge of its contents. The motion provided in unequivocal language for the dismissal of his clients’ claims against the Smiths and Continental (although Continental had already been dismissed). The motion was also signed, without objection, by counsel for the Selfs, who were aligned in the same posture as the Jarreds and the Watsons.
Additionally, Wilson’s clients were compensated for their injuries. The full amount of the defendants’ insurance was made available to the plaintiffs and was disbursed pursuant to an agreement among themselves. Although the payment was by Continental, it was made on behalf of its insureds, the Smiths.
Finally, the record does not support a finding that Bussey reneged on an agreement to delete Wilson’s name from the motion to dismiss. The letters mailed to Bussey’s firm do not confirm such an agreement; they merely state Wilson’s objection to his signature on the documents. The trial court found that Bussey was aware of Wilson’s objections, yet he failed to communicate them to the judge when the judgment of dismissal was presented for his signature. The trial judge did not condone this conduct and, in fact, chastised Bussey for his actions. However, any impropriety that Bussey may have committed occurred after Wilson knowingly and voluntarily agreed to dismiss the Smiths. To allow Wilson to withdraw his consent, which was given almost contemporaneously with his clients’ receipt of the funds, would open the door to abuse of legitimate agreements among counsel. After reviewing the conduct of all parties and the results thereof, we cannot conclude enforcement of the judgment of dismissal would be inequitable and unconscionable, as required under Kem Search.
For the above reasons, the judgment of the trial court is affirmed. Costs of the appeal are assessed to plaintiffs-appellants, *499 Carl Jarred, Ivory Jarred, Michael Watson and Lesa Watson.
AFFIRMED.
LABORDE, J., concurs in the result.
YELVERTON, J., dissents and assigns reasons.

. Although the cases remain consolidated on appeal, we will render a separate decree in each suit. See Self v. Smith, 575 So.2d 500 (La.App. 3d Cir.1991), and Smith v. L.J. Earnest, Inc., 575 So.2d 500 (La.App. 3d Cir.1991), both rendered this same day.